IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JONQUIS PRITCHETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:24-cv-00409-RAH-KFP |
| ) | [WO] |
| OFFICER JUSTIN STANLEY, ) | |
| *Individually*, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

This is an excessive force case involving an arrestee. Jonquis Pritchett[1] sues Officer Justin Stanley for excessive force in the form of a "body slam" during the booking process at the Russell County Jail after Pritchett had been arrested for DUI. Officer Stanley moves for summary judgment based on qualified immunity. The motion has been fully briefed and is ripe for decision. After a review of the record, including the video evidence, the motion will be GRANTED.

### STANDARD OF REVIEW

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" based on materials in the record. Fed. R. Civ. P. 56(a), (c). A genuine dispute of material fact exists if, based on the evidence, "a reasonable jury could

---

[1] The Court notes that the original Complaint and the operative Complaint (the Second Amended Complaint) spell Pritchett's name incorrectly. According to Pritchett's deposition testimony, his last name is spelled P-R-I-T-C-H-E-T-T (doc. 38-4 at 3), not P-R-I-C-H-E-T-T. The Clerk of Court is therefore DIRECTED to update the docket accordingly.

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Whether a fact is material is determined by the applicable substantive law. *Id.* And a dispute is not genuine if it is unsupported by evidence or only created by evidence that is "merely colorable or is not significantly probative." *Id.* at 249 (citations omitted). At this stage, a court views all evidence, and draws all reasonable inferences, "in the light most favorable" to the nonmoving party. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010). Despite this, statements of belief are insufficient to create issues of fact for purposes of defeating a summary judgment motion. *Pace v. Capobianco*, 283 F.3d 1275, 1278–79 (11th Cir. 2002); *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999) ("[Fed. R. Civ. P. 56(c)] . . . applies to testimony given on deposition.").

And when the record clearly contradicts the nonmovant's version of the facts, "a court should not adopt" the clearly contradicted facts "for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010) ("[W]e draw . . . inferences [in the nonmovant's favor] only to the extent supportable by the record." (internal quotations marks omitted) (quoting *Scott*, 550 U.S. at 381 n.8)). Nor should a court adopt a nonmovant's version of facts that are taken out of context where the "record . . . as a whole could not lead a rational trier of fact to find for the nonmoving party." *Johnson v. Niehus*, 491 F. App'x 945, 950 (11th Cir. 2012) (per curiam) (quoting *Scott*, 550 U.S. at 380) (refusing to "cherry pick facts from [nonmovant's] story which support his version of the events and which [could] be reconciled with the otherwise undisputed evidence" (emphasis omitted)). "At the summary judgment

2

stage, a nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Johnson*, 491 F. App'x at 950 (quoting *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir. 2005)). And when video evidence is available, a court views the facts "in the light depicted by the videotape." *Scott*, 550 U.S. at 381.

## BACKGROUND

Pritchett was arrested on June 23, 2024, for DUI. The body camera footage of the arresting officer—Corporal Carsen Nicholson of the Phenix City Police Department—captures much of the events leading to and surrounding the parties' interactions.

**A.     The Arrest**

After being dispatched to investigate a vehicle that was sitting in the road at a stop sign, Corporal Nicholson and another officer arrived on scene around 5:37 a.m. on June 23, 2024. Once there, they found Pritchett asleep at the wheel. Pritchett admits that he had consumed enough alcohol that night that he "probably blacked out." (Doc. 38-4 at 5.) Corporal Nicholson woke Pritchett, had him step out of the vehicle, patted him down to check for weapons, asked him for ID, and had him step to the back of the car. Pritchett was generally cooperative up to that point.

When Corporal Nicholson asked Pritchett if he would perform a field sobriety test, Pritchett's demeanor and level of cooperation changed, but he remained calm and nonaggressive. After much back and forth between the officers and Pritchett, including an initial refusal by Pritchett to participate in a field sobriety test, Pritchett eventually relented and agreed to perform the test. Afterward, Pritchett was arrested for DUI, and he became increasingly agitated. Pritchett was then placed in the police cruiser and taken to the police department for a breathalyzer test and subsequently to jail.

At the police department, Pritchett complained, argued, used profanity, and became increasingly difficult and animated. However, he did not become physically combative. He ultimately refused to take the breathalyzer test.

**B.     The Events at the Jail**

Corporal Nicholson's body camera continued to record while at the Russell County Jail. Upon arrival and as he was escorted into the jail, Pritchett continued to voice his displeasure and disagreement with the arrest and continued to use profanity.

At the holding cell, Corporal Nicholson asked Pritchett to turn around so that he could uncuff him, and Pritchett complied. But when Corporal Nicholson asked Pritchett to remove his jewelry, Pritchett's language, tone, demeanor, and mannerisms quickly turned as Pritchett refused to immediately remove his jewelry. To the first request, Pritchett did not remove his jewelry, stating "Nah, cause y'all doing the wrong booking." (Doc. 38-6 at 02:14.)  In response to the second request, Pritchett again refused and walked away into the cell.  Corporal Nicholson then closed the cell door and informed the jail staff of Pritchett's refusal. Four members of the jail staff[2] then responded to the holding cell.

One of the responding jail staff members was Correctional Officer—and power-lifter—Justin Stanley, who weighed approximately 290 pounds and stood six feet tall. (Doc. 38-9 at 6.)  The four staff members entered the cell and surrounded Pritchett. Pritchett raised his voice, argued, and became animated, but Pritchett eventually began to slowly remove one of his earrings, which he placed into his left hand.   Pritchett and the officers then moved into the hallway and out of the cell. Pritchett however continued to argue, raise his voice, and became verbally combative.

---

[2] These staff members included Officer Stanley, Sergeant Adams, Corporal Osborne, and Officer Bryant. (Doc. 38-17 at 4.)

4

Upon entering the hallway, Pritchett continued to protest and refuse the officers' commands that he remove his jewelry. Pritchett and Sergeant Adams went back and forth on the jewelry issue, with Pritchett making slow efforts to unlock the clasp of his gold necklace. Eventually, Officer Stanley positioned himself behind Pritchett so that Pritchett was again surrounded by four jail staff members. Stanley rocked from one foot to the other, shifting his weight repeatedly as he stood behind Pritchett, who continued to slowly fumble with his necklace and argue with the other jail staffers.

Eventually, Sergeant Adams attempted to turn Pritchett around, and in response, Pritchett dropped his hands from the back of his necklace and bumped Stanley. (Doc. 38-6 at 05:15.) Stanley pushed back, stating, "She asked you to turn around." Pritchett responded, "No, but I was trying to get—" and raised his right hand to point to the back of his necklace. (*Id.* at 05:20.) At that point, Stanley pushed Pritchett's hand down, saying, "Stop putting your hand up there." (*Id.*) Pritchett then told the jail staff that their actions were "crazy." (*Id.*) While two of the jail staffers worked to remove the necklace, Pritchett continued to complain, eventually saying "Nah, you ain't fixing to break shit off of me." (*Id.* at 05:38.) Pritchett again raised his arms in the direction of his necklace, but Stanley took hold of Pritchett's wrist and repeated "put your hand down." (*Id.* at 05:42.) Pritchett did not comply and again reached back up to his necklace.

During this time, Corporal Nicholson, holding an open envelope, instructed Pritchett twice to place his earring inside. Pritchett took his earring out of his left hand and put it in his right hand, at which point Sergeant Adams grabbed his wrist and stated, "Put them in there!" (*Id.* at 06:05.) Pritchett pulled his arm back, which caused his hand to come close to Stanley's face. Stanley then grabbed Pritchett's wrist with both hands, saying, "Hey man," and then pulled Pritchett across the hall into the other open cell. (*Id.* at 06:10.)

5

As depicted from the video, Stanley moved Pritchett through the cell's threshold as Pritchett tried to pull away. Stanley wrapped his arms and twisted around Pritchett while simultaneously forcing Pritchett the rest of the way into the cell. Two officers then stood in the doorway, which blocked the view of the camera. Inside the cell, Stanley used a leg sweep to take Pritchett to the floor. Pritchett characterizes it as a "body slam." From there, per Pritchett, Stanley continued to punch him in the ribs.

According to Pritchett, he simply asked the officers about his belongings, and while he was taking off his jewelry, the next thing he knew, he was "up in the air," "being attacked," was "throw[n] to the ground," (doc. 38-4 at 6), and "body slammed into a cell." (*Id.* at 8). In Pritchett's view, he did not "put[] on a tantrum, try[] to kick at [anybody], try[] to spit on [anybody]" and that anyone who says that he kicked at Stanley is lying or trying "to cover up something." (*Id.* at 9.) After being thrown in the cell, Stanley "straddled" him and "just kept punching" him on either side of his ribs. (*Id.* at 9–10.) Per Pritchett, he did not "punch[]," "reach and grab," or "do anything." (*Id.* at 10.) He only tensed up on the ground and "brac[ed himself]." (*Id.*) When Pritchett "balled up on the ground," Stanley stopped hitting Pritchett, "stripp[ed] [his] clothes off," and put him in the "turtle suit."[3] (*Id.*)

Stanley does not dispute that he used force on Pritchett. He testified that, to him, Pritchett's repeated defiance and continued hand-raising was a "red flag" and that he decided to use force when Pritchett tensed his shoulders and turned his body while holding a sharp, "inch-long" earring while surrounded by Stanley's co-workers. (Doc. 38-9 at 8–9.) Because Stanley did not know what Pritchett would do with the sharp earring in hand, he grabbed Pritchett and forced him into the cell—at which point Pritchett buckled down and turned and tried to run out of the cell. And

---

[3] The "turtle suit" is a jail smock, poncho-like article of clothing designed so that it cannot be easily torn or made into a ligature. (Doc. 38-7 at 3.)

based on that action, Stanley grabbed Pritchett under his ribs, "picked him up off his feet, [swept] his feet, and then . . . went to the floor" with him. (*Id.* at 9–10.) Stanley states he landed halfway on the ground and hallway on top of Pritchett. (*Id.* at 12.)

Once on the ground, Stanley acknowledges that he hit Pritchett, but according to Stanley, he did so because Pritchett tried to roll over, kick at Stanley, attempt to push himself up, and reached for Stanley's duty belt, which contained a tactical baton, keys, and other items. Per Stanley, the two of them arm-grappled for about thirty seconds until Pritchett turned over on this stomach and stopped fighting, at which point the jail staff undressed him and placed him in the jail smock.[4] (*Id.* at 12–13.)

George James was an arrestee in the jail cell when the force event occurred and witnessed the takedown. According to James, before the takedown, Pritchett was yelling at the jailers just outside of his cell and refusing to comply with the repetitive instructions to remove his jewelry. At one point, Pritchett pushed the jail staff from himself. Per James, Stanley took hold of Pritchett in response to that action. Pritchett then kicked back at Stanley. (Doc. 38-15 at 04:00.) James witnessed Stanley throw Pritchett into the cell where Pritchett's legs hit James in the head. Then, once Pritchett was in the cell, Stanley continued to hold him down while another officer hit him until he stopped resisting. Afterward, the jailers placed Pritchett in the turtle suit.

The following morning, Pritchett left the jail and visited a local emergency department where he was diagnosed with a left-sided rib fracture and contusions of

---

[4] According to Stanley, these actions are part of the forced booking procedure—a jail procedure employed to ensure a combative inmate is processed through booking. (Doc. 38-9 at 13.) It involves removing the inmate's clothes and all belongings to ensure the inmate has no weapons, and a suicide jail smock is used to ensure the inmate does not harm themselves. (*Id.*; Doc. 38-10 at 3–4.)

his right hip and left shoulder. The ED discharged him with prescription medications to treat his pain and an incentive spirometer.[5]

On July 12, 2024, Pritchett filed this lawsuit,[6] claiming that Officer Stanley's takedown of Pritchett—the body slam—constituted a violation of his Fourth Amendment right to be free from excessive force.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction under 28 U.S.C. § 1331. The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both. *See* 28 U.S.C. § 1391.

## DISCUSSION

Pritchett sues Officer Stanley under 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment.[7] The parties dispute: 1) the scope of the force being challenged; and 2) Officer Stanley's entitlement to qualified immunity.

---

[5] An incentive spirometer is a device that encourages patients to perform slow and deep inhalation through visual feedback, which helps to increase lung volume and prevent lung infection after surgery or injury that would otherwise diminish a patient's drive to utilize inspiratory muscles. *See* Emily Franklin & Fatima Anjum, *Incentive Spirometer and Inspiratory Muscle Training*, NAT'L LIBR. OF MED. (last updated April 27, 2023), https://www.ncbi.nlm.nih.gov/books/NBK572114/ (last visited July 10, 2025).

[6] The operative complaint (doc. 20) is styled as the *Second Amended Complaint*. But the motion requesting leave to file the *First Amended Complaint* (doc. 15-1) was denied as moot after Pritchett filed a second motion. So the first proposed amended complaint was never docketed as an amended complaint. The *Second Amended Complaint* will therefore be referred to as the "Amended Complaint" throughout this Opinion.

[7] Both parties agree that Officer Stanley's actions are properly analyzed under the Fourth Amendment's objective reasonableness standard. Under the Supreme Court's current framework, the Fourth Amendment covers arrestees, the Eighth Amendment covers prisoners, and the Fourteenth Amendment covers "those who exist in the in-between—pretrial detainees." *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 952 (11th Cir. 2019). While the moment in time that an arrestee becomes a pre-trial detainee is not always clear, Pritchett's classification is inconsequential because the "Fourteenth Amendment has come to resemble the test that governs excessive-force claims brought by arrestees under the Fourth Amendment." *Crocker v. Beatty*, 995 F.3d 1232, 1252 (11th Cir. 2021) (internal quotations and citation omitted); *Patel v. Lanier Cnty.*, 969 F.3d

A.     **The Force at Issue**

First, to define the scope of conduct by Officer Stanley at issue. According to Officer Stanley, the Amended Complaint is very clear in alleging that the "body slam"—and only the "body slam"—is the excessive force on which Pritchett brings suit, and therefore the body slam is the only conduct that should be considered. Pritchett acknowledges that the Amended Complaint only references the body slam, but he counters that all of Officer Stanley's actions that day should be examined, including the punches and hits after the body slam. Because of this dispute, the question is whether the force used after the body slam constitutes an elaboration of evidentiary details or an impermissible attempt to amend the complaint through the summary judgment briefing.

It is well settled that the "plaintiff is the master of the complaint." *United States v. Jones*, 125 F.3d 1418, 1428 (11th Cir. 1997). Fed. R. Civ. P. 8(a)(2) requires a plaintiff to state "a short and plain statement of the claim showing that the pleader is entitled to relief." This short statement need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

While the statement of the claim "need not specify in detail the precise theory giving rise to recovery," it still must alert the defendant "as to the claim being asserted against him *and the grounds on which it rests*." *MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*, 60 F.4th 1314, 1319 (11th Cir. 2023) (internal quotations and citation omitted) (emphasis added). And even when a defendant is aware of possible factual bases for a cause of action against him, that does "not relieve [a plaintiff] of [his] obligation to follow the pleading requirements and allege

---

1173, 1182 (11th Cir. 2020) ("After *Kingsley*, the Fourteenth Amendment's standard is analogous to the Fourth Amendment's.").

in [the] complaint [the factual allegations] serv[ing] the basis for liability." *Id.* at 1320. Further, once discovery commences, "Rule 8(a)'s liberal pleading standard is inapplicable." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006).

Should a plaintiff choose not to plead a theory of liability in the complaint or amend the complaint, he cannot later use summary judgment briefing to amend the complaint. *See Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 859 (11th Cir. 2020) (per curiam); *see also Hurlbert*, 439 F.3d at 1297 (explaining plaintiffs generally cannot change the basis of their claims at the summary judgment stage); *cf. Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 705 (11th Cir. 2016) (discounting certain arguments of the plaintiff at the motion to dismiss stage "because they depend[ed] on facts that were not pled in his complaint"). Nor may a court amend a plaintiff's complaint on its own because the court may not serve as an advocate. *See Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013).

Here, Officer Stanley argues that because the Amended Complaint's excessive force claim only refers to a "body slam," the Court may not consider any other force. Pritchett argues that the Amended Complaint "alleges that Officer Stanley used excessive force during booking[, which] is enough to encompass the entire sequence of events, including Stanley's admitted closed-fist blows after slamming Pritchett to the floor." (Doc. 42 at 29.)

Pritchett may be correct in the abstract, but that is not how he drafted his Amended Complaint. The Amended Complaint is so specific as to Officer Stanley's takedown of Pritchett that its allegations can only be read so as to exclude any other conduct or force. It contains no "catch-all" phrase to construe as a reference to any and all related force used during the booking process, and there is no allegation

permitting Officer Stanley or the Court to view the excessive force theory as based on anything other than the body slam. As it states:

> As Mr. Pritchett was removing his jewelry, Officer Stanley became enraged, and Officer Stanley body slammed Mr. Pritchett to the floor causing the aforementioned injuries.

(Doc. 20 at 3.)

> Defendant slammed Mr. Pritchett to the floor without justifiable cause. While operating under the color of state law, Defendant's actions injured Mr. Pritchett and violated his clearly established constitutional rights.

(*Id.*)

> *Officer Stanley's excessive use of force in body slamming Mr. Pritchett to the floor was unreasonable.*

(*Id.* at 5 (emphasis added).)

> As a direct and proximate result of the violent attack, Mr. Pritchett suffered serious injuries . . . , including . . . a fractured rib, contusion of hip, and contusion of shoulder, as well as substantial pain and suffering.

(*Id.* at 6 (referring to the body slam in context).)

> Officer Stanley's conduct was the moving force and the proximate and producing cause of the aforementioned injuries.

(*Id.* (referring to the body slam in context).)

> The conduct of Defendant was intentional, outrageous, and demonstrated a reckless or callous indifference to Mr. Pritchett's rights.

(*Id.* at 7 (referring to the body slam in context).)

Pritchett does not allege, for example, that the force Officer Stanley used *during the booking process* was the basis for the excessive force claim, or that the force Officer Stanley *used to subdue or control or maintain* Pritchett was excessive, or that the body slam *and all other* force used on Pritchett was excessive. Instead, he alleges *specifically* that it was the body slam that was excessive. Pritchett chose

11

to frame the Amended Complaint in this way. Importantly, while video footage is not available to depict what occurred after the body slam, Pritchett was present, he testified that he did not lose consciousness, and he testified that he remembered Officer Stanley punching him after the takedown. Yet Pritchett chose not to include these facts or allegations in the Amended Complaint even though he amended his original complaint twice.[8] The Court may not amend the operative complaint for Pritchett. And Pritchett cannot use his summary judgment brief to amend the Amended Complaint and raise new allegations.

Pritchett argues that the Eleventh Circuit "has rejected efforts to dissect an excessive force claim into separate parts where the force is part of a continuous encounter." (Doc. 42 at 29 (citing *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled in part on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010)).) He argues that in *Danley* "the court treated officers' use of pepper spray followed by locking a detainee in a poorly ventilated cell as interrelated parts of a single course of conduct," and therefore the Court here should view the takedown and the subsequent events inside the cell as interrelated too. (*Id.* (internal quotations omitted).)

But a closer reading of *Danley* does not support Pritchett's desired outcome here. *Danley* involved a DUI arrestee and the deliberate decision to allow the effects of pepper spray to continue to cause the arrestee pain and discomfort for the guards' sadistic pleasure. *See* 540 F.3d at 1305. The Eleventh Circuit held that "[a]t the Rule 12(b)(6) stage, Danley [was] entitled to have the [c]ourt consider both the spraying and the twenty minutes of confinement in the small, poorly ventilated cell as a single

---

[8] In the Amended Complaint, Pritchett alleges that he would file an amended complaint once the body camera footage was produced. (*See* doc. 20 at 2 ("Upon receipt and review of the said video recording, Mr. Prichett [sic] will seek leave to amend this Complaint as necessary.").)

12

claim of excessive force *if* 'the allegations in the complaint' [could] possibly be considered as such 'in the light most favorable to [him].'" *Id.* at 1306 (emphasis added) (alterations in original) (quoting *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007)). There, viewed in the light most favorable to Danley, the allegations in the complaint could be viewed as a single excessive force claim just like "two blows in a beating" because the "nearly simultaneous actions are interrelated parts of a single course of conduct, not separate events." *Id.* at 1307. The court explained that this was in contrast to those circumstances where a plaintiff requests to "parse[] individual acts in a single sequence of events into separate claims." *Id.* (citing *Skrtich v. Thornton*, 280 F.3d 1295, 1301–02 (11th Cir. 2002) (constraining excessive force claim to use of force after initial force was used to incapacitate the plaintiff because the plaintiff "only challenge[d] the assault that occurred after he had been incapacitated by the shock of the electronic shield")).

Here, unlike in *Danley* where "the allegations in the complaint [could] possibly be" construed in such a way as to encompass the initial use of force and the lingering effects thereafter, *id.* at 1306 (internal quotations omitted), Pritchett's Amended Complaint is so specific and limited as to the body slam that its very wording excludes any other force. In other words, out of the entirety of the use of force incident, Pritchett parsed out the body slam alone. As the master of the complaint, Pritchett chose the body slam upon which to base his theory of liability, and that is the conduct that will be considered under his excessive force claim.

**B. Qualified Immunity**

Having defined Officer Stanley's conduct at issue, the question now is whether Officer Stanley is entitled to qualified immunity. As far as the alleged body slam goes, he is.

Qualified immunity offers complete protection for government officials sued in their individual capacities when acting within their discretionary authority if their

conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This immunity protects officers reasonably serving in their line of duty and provides them the necessary breathing room to work "without fear of liability." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019). However, qualified immunity does not protect those who are "plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Once an officer shows he acted within his discretionary authority, he is entitled to qualified immunity, and it is on the plaintiff to overcome it. *Edger v. McCabe*, 84 F.4th 1230, 1235 (11th Cir. 2023). To do so and prevail on a § 1983 claim against a government official acting within his discretionary authority, the plaintiff must show two things: 1) "the defendant's conduct violated a constitutional or statutory right"; and 2) the violated right was "clearly established." *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1305 (11th Cir. 2009) (citation omitted). A court may consider these two requirements in any order during its determination of whether qualified immunity has been defeated. *See Corbitt*, 929 F.3d at 1311.

The parties agree that Officer Stanley acted within his discretionary authority. Officer Stanley argues that Pritchett cannot show that Officer Stanley violated a constitutional right, but that if he did, given the conduct under review, that right was not clearly established at the time of the incident. The Court will jump to the second prong, as that prong is dispositive.

Under the second prong of the qualified immunity analysis, only decisions of the Supreme Court of the United States, the Eleventh Circuit Court of Appeals, or the Supreme Court of Alabama "can clearly establish the law." *Crocker*, 995 F.3d at 1240 (internal quotations and citation omitted). To be clearly established, the right's contours must be so clearly defined "that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)

14

(internal quotations and citation omitted). Therefore, a court must look to the law as it stood at the time of the alleged wrongful conduct, and it must "not define clearly established law at a high level of generality" because "doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *District of Columbia v. Wesby*, 583 U.S. 48, 63–64 (2018) (internal quotations and citation omitted). Further, law cannot be clearly established by a court decision that finds no constitutional violation because a decision that finds no violation does not give definition to constitutionally violative conduct. *See Jackson v. City of Atlanta*, 97 F.4th 1343, 1363 (11th Cir. 2024) ("A decision holding that an officer did not violate the Fourth Amendment by failing to intervene in that case cannot possibly establish—much less clearly establish—that an officer did violate the Fourth Amendment in another case by failing to intervene.").

Generally, a violation of a constitutional right is clearly established one of three ways:

> (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009) (citations omitted). But with Fourth Amendment excessive force claims, there is "no bright line [that] exists for identifying when force is excessive[.]" *Johnson*, 18 F.4th at 1273 (internal quotations and citation omitted); *cf. Corbitt*, 929 F.3d at 1315 ("The principle that officers may not use excessive force to apprehend a suspect is too broad a concept to give officers notice of unacceptable conduct." (internal quotations, citation, and brackets omitted)). Therefore, "unless a controlling and materially similar case declares the official's conduct unconstitutional, a defendant is usually entitled to qualified immunity." *Johnson v. City of Mia. Beach*, 18 F.4th

15

1267, 1273 (11th Cir. 2021) (internal quotations and citation omitted); *see Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (per curiam) ("[T]o show a violation of clearly established law, [the plaintiff] must identify a case that put [the officer] on notice that his specific conduct was unlawful. [The plaintiff] has not done so."). Pritchett argues both the first and second avenues. Neither works.

First, Pritchett identifies no caselaw with indistinguishable facts. Instead, he collects cases with factual circumstances materially different from the case at hand. Pritchett is correct in that caselaw clearly establishes "that an officer violates the Fourth Amendment when he uses gratuitous force against an arrestee who is fully secured, not resisting arrest, and not posing a safety threat to the officer." *Johnson*, 18 F.4th at 1274 (citation omitted). But that broad factual characterization—within the scope of Pritchett's Amended Complaint—is not what is before the Court.

According to Pritchett, he "compl[ied] with the officers' instructions to remove his jewelry and complete the booking process. He never threatened the officers, never made any overt act of resistance, and repeatedly tried to reassure them that force was unnecessary." (Doc. 42 at 27.) And on that characterization of the facts, Pritchett likens this case to those where officers used force on *subdued, non-resisting* individuals and therefore argues that "any reasonable officer would have known that using force—let alone slamming a compliant detainee to the ground—violated clearly established law." (*Id.*) But even viewed in the light most favorable to him, the video evidence shows that Pritchett was not subdued and not secured; and while he was not fighting the officers, he also was not readily complying with their orders either. The video clearly depicts a disagreeable and noncompliant Pritchett—hands unsecured, an earring in one hand, using hand gestures, while intoxicated—all while the officers, over the course of several minutes, tried to

convince Pritchett to remove his jewelry to no avail.[9] And specific to Officer Stanley, he had instructed Pritchett to keep his hands down more than once before making the decision to physically force Pritchett into the cell and away from the other officers.

Pritchett identifies no caselaw showing an officer violates clearly established law when he forces down a disagreeable, noncompliant, agitated, animated, and intoxicated arrestee—who is in possession of a sharp object and who has stalled and not followed commands to remove jewelry over the course of several minutes—into a cell to secure him to complete the booking process. The closest Pritchett comes is *Johnson v. City of Miami Beach* in which the Eleventh Circuit held it is clearly unlawful for an officer to "strike an arrestee who [is] fully secured, not resisting, not posing a safety threat, and not attempting to flee." *Johnson*, 18 F.4th at 1274–75. But those are not the facts here. In *Johnson*, while the plaintiff-arrestee, like Pritchett, also verbally argued with the officers while initially complying with their commands but later refused to go inside the cell, it was not the force used to push the arrestee into the cell that was under examination. *Id.* at 1270. It was instead the force used when an officer entered the cell and elbowed the then-secured plaintiff-arrestee in the face. *Id.* at 1271, 1273. Pritchett was not secured—he stood outside the cell, hands uncuffed, and was holding a sharp earring.[10] Thus, *Johnson* is

---

[9] Had he complied with the first order to remove his jewelry, Pritchett could have done so in less than a minute.

[10] This case is more like several controlling cases where the officers used force where the inmate was not following instructions. *See Danley*, 540 F.3d at 1307 (concluding use of some force was justified when an inmate twice refused an order to return to his cell); *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990) (holding that grabbing an inmate by the throat and pushing him against the bars of his cell was not excessive after the inmate failed to follow instructions and disrupted prison procedures); *see also Robinson v. Lambert*, 753 F. App'x 777, 780 (11th Cir. 2018) (per curiam) ("[The] [o]fficer . . . was warranted in using force given [the inmate's] repeated refusal to obey commands. . . . Thus, initial use of force in pulling [the inmate] from his bunk, slamming him against the wall, and placing him in a hammerlock was reasonable."). Further, caselaw in

factually distinguishable from the factual circumstance here—again, an officer employing a takedown of an unsecured, disagreeable, intoxicated arrestee with a sharp object in hand.

Also, Pritchett does not overcome qualified immunity under the "broad principle" avenue either. "To find that a broad principle of law clearly establishes the law as to a specific set of facts, it must do so with obvious clarity to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011) (internal quotations and citation omitted). "'[O]bvious clarity' cases [are] rare." *Id.*

So, did Officer Stanley's body slam violate Pritchett's constitutional rights as a matter of obvious clarity? This question, however, still depends on the "particular circumstances that [Stanley] faced." *Wesby*, 583 U.S. at 63–64.

Pritchett argues that "[i]t is simply beyond debate that [] when a detainee is complying, not resisting, and poses no danger to anyone, any use of force—even a single punch—is excessive." (Doc. 42 at 27 (emphasis omitted). But once again, this is not the factual scenario depicted in the video footage. The video footage does not show with obvious clarity that every objectively reasonable government official facing the same circumstances would know that Officer Stanley's takedown under

---

Eighth and old Fourteenth Amendment excessive-force-standard contexts establishes that "[p]rison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Carter v. McCullen*, No. 22-10499, 2023 WL 6120616, at *5 (11th Cir. Sept. 19, 2023) (per curiam) (unpublished) (quoting *Danley*, 540 F.3d at 1307). Therefore, in those contexts, prison officials are given a "wide range of deference [when] . . . acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." *Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019) (citation omitted). While this case is in the Fourth Amendment context and the cited cases did not find constitutional violations and therefore cannot clearly establish law, these concepts do blur lines of what a correctional officer may do under a Fourth Amendment objective reasonableness standard when trying to maintain order within the jail facility. Thus, the law is not clearly established.

18

those circumstances would violate federal law. Therefore, Pritchett has not met his burden under this consideration.

Because Pritchett failed to show that his alleged violated right was clearly established, he does not meet his burden to overcome Stanley's qualified immunity. *See Edger*, 84 F.4th at 1235; *Mann*, 588 F.3d at 1305.

## CONCLUSION

Accordingly, it is **ORDERED** that *Defendant Officer Justin Stanley's Motion for Summary Judgment* (doc. 36) is **GRANTED**. A Final Judgment will be issued separately.

**DONE** and **ORDERED** on this the 29th day of August 2025.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE